UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:05CV-00165-JHM

JOE RAY TURNER                                                    PETITIONER

VS.

JAMES L. MORGAN, Warden                                          RESPONDENT

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION

BACKGROUND

Petitioner, *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with a supporting memorandum and attached exhibits (DN 1). The petition and supporting memorandum identify several grounds for relief (DN 1). The district court referred this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) (DN 5).

Respondent has filed an answer as well as a motion to dismiss or in the alternative, motion for summary judgment (DN 9, 10, 11). Petitioner has filed a traverse to the answer (DN 18) as well as a supplement to his traverse (DN 34). The undersigned concludes that an evidentiary hearing is not necessary to address the claims asserted by Petitioner. The issues raised by Petitioner are fully developed and this matter is ripe for determination.

FINDINGS OF FACT

On December 2, 1997, an Allen County Grand Jury charged Petitioner, Joe Ray Turner ("Turner"), with the murder of his father, William Turner (DN 12, Appendix at 1).  The indictment charges that on October 18, 1997, Turner murdered his father by beating him with a tire iron and slamming his head against a wall numerous times (DN 12, Appendix at 1).

On May 20, 1998, a jury found Turner guilty of murder and recommended he be imprisoned for 99 years (DN 12, Appendix at 2).  In an order entered June 22, 1998, the trial court sentenced Turner to serve a sentence of 99 years (DN 12, Appendix at 4).

On direct appeal, Turner made three claims (DN 12, Appendix at 6-21).  First, he asserted the trial court committed reversible error when it initially allowed into evidence, under the medical history exception, hearsay statements by the victim naming Turner as his attacker (DN 12, Appendix at 11-13).  Next, Turner alleged the trial court committed reversible error when it subsequently allowed the victim's hearsay statements into evidence under the dying declaration exception to the hearsay rule because the Commonwealth failed to demonstrate the victim was aware of his impending death at the time he made the statements (DN 12, Appendix at 13-17).  Finally, he argued when the "perceived conflict of interest" between Turner and a potential defense witness, Cathy Scruggs, became apparent, the trial court erred in failing to advise Turner of his right, under Ky.R.Crim.P. 8.30, to separate counsel (DN 12, Appendix at 18-21).  Notably, in the last sentence of this argument Turner asserted the trial court's omission "is a clear infringement of his Sixth Amendment right to counsel" (DN 12, Appendix at 21).

The Supreme Court of Kentucky affirmed the judgment of conviction and sentence

imposed by the Allen Circuit Court (DN 12, Appendix at 38-45).  As to the first and second claims, the appellate court concluded the evidence presented to the trial court was sufficient to support the trial court's finding that the victim believed his death was imminent when he identified Turner as the perpetrator of his injuries (DN 12, Appendix at 40-44).  Therefore, the Kentucky Supreme Court held there was no error in admitting the hearsay statements of the victim (DN 12, Appendix at 40-44).

In addressing the final claim, the Supreme Court of Kentucky acknowledged that Turner theorized Cathy Scruggs was the murderer because his father was having an illicit sexual relationship and drug dealings with her (DN 12, Appendix at 44).  The appellate court noted on the morning of the murder Scruggs had been arrested on narcotics charges and blood was found on a bed frame and mattress in her apartment (DN 12, Appendix at 44).  However, it observed that no match was found when the blood was tested and Scruggs' narcotics charge was still pending as of the date of Turner's trial (DN 12, Appendix at 44).

The Supreme Court of Kentucky acknowledged that Turner attempted to call Scruggs as a witness at trial (DN 12, Appendix at 44).  It observed that due to Turner's counsel also representing Scruggs on the narcotics charge, another attorney was appointed to advise Scruggs of her Fifth Amendment rights (DN 12, Appendix at 44).  The Supreme Court noted that after Scruggs consulted with appointed counsel she refused to testify and was not called as a witness (DN 12, Appendix at 44).

The Supreme Court of Kentucky pointed out that Ky.R.Crim.P. 8.30(1) applies "only when two persons represented by the same counsel are 'accused of the same offense or of offenses arising out of the same incident or series of related incidents'" (DN 12, Appendix at 44).  Noting that

3

Scruggs was never charged with William Turner's murder and that Turner's counsel represented her on an unrelated narcotics charge, the Supreme Court of Kentucky concluded "any possible conflict of interest was avoided by the appointment of independent counsel to advise Scruggs of her rights" (DN 12, Appendix at 44). The Supreme Court of Kentucky then commented, "[p]resumably, the result would have been the same had Appellant been represented by different counsel and Scruggs been advised of her rights by her own attorney" (DN 12, Appendix at 44-45). For the above reasons, the Supreme Court of Kentucky concluded Ky.R.Crim.P. 8.30(1) "has no application to these facts" (DN 12, Appendix at 45).

In February 1999, while his direct appeal was still pending, Turner's appellate counsel filed a Motion to Vacate or Set Aside the conviction pursuant to Ky.R.Crim.P. 11.42 (DN 13, Appendix at 46-63). Turner's Rule 11.42 motion raised a claim of ineffective assistance of counsel (DN 13, Appendix at 46-62). Turner alleged he received ineffective assistance of counsel due to a conflict of interest arising out of defense counsel's contemporaneous representation of Cathy Scruggs on unrelated drug charges (DN 13, Appendix at 58-61). Alternatively, Turner argued he received ineffective assistance of counsel because defense counsel presented no evidence of a defense other than Turner's testimony that he did not commit the murder (DN 13, Appendix at 61-62).

Following an extensive evidentiary hearing that included 13 witnesses and 25 exhibits the parties submitted post-hearing briefs and rebuttal briefs (DN 13, Appendix at 64-65). The trial court issued a memorandum and order, entered June 23, 2000, that denied Turner's Rule 11.42 motion (DN 13, Appendix at 64-78). Citing Wilson v. Commonwealth, 975 S.W.2d 901 (Ky. 1998), the trial court concluded since the Supreme Court of Kentucky already addressed Turner's

conflict of interest claim on direct appeal it was not appropriate for consideration in a Rule 11.42 proceeding (DN 13, Appendix at 65-66). As to Turner's alternative claim of ineffective assistance of counsel, the trial court concluded as to the numerous alleged errors and omissions Turner had not satisfied his burden under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984) (DN 13, Appendix at 66-78).

Turner subsequently moved the trial court to make additional findings regarding his claim that he received ineffective assistance of counsel due to a conflict of interest (DN 13, Appendix at 79-82). He attempted to distinguish his present Sixth Amendment claim from the claim asserted on direct appeal (DN 13, Appendix at 79-82). After conducting a hearing, considering a post-hearing memorandum (along with copies of the federal cases cited therein), and the evidence adduced during the earlier evidentiary hearing, the trial court concluded Turner had not satisfied his burden of showing an actual conflict of interest on the part of trial counsel (DN 13, Appendix at 83-88).

On February 5, 2001, Turner filed a motion for findings of fact and conclusions of law regarding the trial court's appointment of the Allen County Public Advocate, Wesley Miliken, to represent him on the murder charge (DN 13, Appendix at 89-91). The trial court denied the motion because the circumstances giving rise to the appointment of the Allen County Public Advocate are matters of record and the trial court was unaware of any authority which would obligate it to comply with Turner's request (DN 13, Appendix at 92-93).

Turner appealed the trial court's unfavorable ruling on his Rule 11.42 motion (DN 14, Appendix at 94-121). On appeal, he raised the following claims: (1) trial counsel had an actual conflict of interest that was known or reasonably should have been known to the trial court, and

5

because the trial court not only did not conduct an inquiry but actively impeded any meaningful inquiry, Turner's conviction must be reversed; (2) Turner received ineffective assistance of counsel because trial counsel actively represented conflicting interests at trial and counsel's divided loyalties adversely affected his performance on behalf of Turner; and (3) Turner received ineffective assistance because defense counsel utterly failed to develop the only theory of defense by refusing to investigate concrete factual leads and refusing to present witnesses who were known or reasonably should have been known to counsel (DN 14, Appendix at 94-121).

In an opinion rendered on March 22, 2002, the Kentucky Court of Appeals affirmed the order of the Allen Circuit Court denying Turner's Rule 11.42 motion (DN 15, Appendix at 140-146). As to Turner's first claim, the appellate court noted on direct appeal the Supreme Court of Kentucky determined there had not been a conflict of interest under Ky.R.Crim.P. 8.30(1) because Turner and Cathy Scruggs "were not 'accused of the same offense or offenses arising out of the same incident or series of related incidents'" (DN 15, Appendix at 143-144) (internal citations omitted). Further, the Kentucky Court of Appeals found no merit to Turner's claim that counsel's performance was adversely affected by divided loyalties to Turner and Scruggs (DN 15, Appendix at 144). Specifically, the appellate court concluded defense counsel "made a sound, strategic decision not to call Scruggs as a defense witness since her testimony would tend to be harmful to Turner" (Dn 15, Appendix at 144).

As to Turner's final claim, the Kentucky Court of Appeals concluded Turner had not satisfied his burden under the performance prong in Strickland v. Washington, 466 U.S. 688 (1984), except for his assertion that counsel failed to investigate Leslie Simmons' alleged threat to kill the victim (DN 15, Appendix at 143, 145). However, it found Turner failed to satisfy his burden under

6

the prejudice prong as to this assertion (DN 15, Appendix at 143, 145).  In an order entered March 12, 2003, the Supreme Court of Kentucky denied Turner's motion for discretionary review (DN 15, Appendix at 147).

   On August 23, 2004, Turner filed a petition for writ of prohibition with the Kentucky Court of Appeals that named the trial court judge as a respondent (DN 16, Appendix at 148-159). Turner argued a "constructive amendment" to the indictment had occurred because the Grand Jury charged him with intentional murder but the petit jury found him guilty of wanton murder due to the jury instruction (DN 16, Appendix at 148-159).  He argued that the trial judge wrongfully denied his motion to correct the final judgment to reflect a wanton murder conviction (DN 16, Appendix at 148-159).  In the petition Turner requested the appellate court declare the judgment of conviction a nullity and enjoin further execution of the judgment (DN 16, Appendix at 148-159).

   The Kentucky Court of Appeals found that Turner procedurally defaulted his claim because he failed to raise it on direct appeal (DN 16, Appendix at 160-162).  In light of this procedural default, it concluded issuance of a writ of prohibition was not proper (DN 16, Appendix at 160-162).  In an order entered July 7, 2005, the Supreme Court of Kentucky dismissed Turner's appeal because it was not perfected (DN 16, Appendix at 164).

   A Westlaw search has revealed three unpublished opinions by the Kentucky Court of Appeals that are not included in respondent's Appendix of State court records.  The first unpublished opinion addresses *pro se* appeals from the trial court's denial of a second or successive Ky.R.Crim.P. 11.42 motion and a Ky.R.Civ.P. 60.02 motion.  Turner v. Commonwealth, 2004 WL 1125046 (Ky.App. May 21, 2004).  In essence, the Kentucky Court of Appeals held Turner was procedurally barred from raising the issues in Appeal No. 2002-CA-000777-MR.  Id. at *1-2.  As

to the issues raised in Appeal No. 2003-CA-000846-MR, the Kentucky Court of Appeals concluded two of the issues have no basis in law, one issue is time barred as well as procedurally barred, and the final issue failed because summary judgment procedures are not authorized in criminal actions. Id. at *3.  The Kentucky Court of Appeals affirmed the trial court's orders denying Turner's motions.  Id.  The Supreme Court of Kentucky denied discretionary review on February 9, 2005. Id. at *1.

The second unpublished opinion addresses a *pro se* appeal from the trial court's denial of two additional Ky.R.Civ.P. 60.02 motions for post-conviction relief.   Turner v. Commonwealth, 2004 WL 2563668, *1 (Ky.App. Nov. 12, 2004), reh'g denied (Ky.App. Dec. 22, 2004).  The appellate court noted one Rule 60.02 motion alleged juror misconduct and the other alleged the evidence was insufficient to sustain his conviction for wanton murder.  Id.  The Kentucky Court of Appeals held the juror misconduct claim was not raised within a reasonable time. Id. at *2-3.  It held review of the insufficient evidence claim was procedurally barred because it could have been raised on direct appeal.  Id.  The appellate court noted Turner also argued there was "a 'fatal variance' in his indictment at trial which constituted a palpable error warranting a new trial."  Id.  It concluded review was procedurally barred because it could have been raised on direct appeal.  Id.  The Supreme Court of Kentucky denied discretionary review on April 13, 2005.  Id. at *1.

The third unpublished opinion addresses a *pro se* appeal from the trial court's denial of a Ky.R.Crim.P. 10.10 motion.  Turner v. Commonwealth, 2005 WL 1125006 (Ky.App. May 13, 2005).  Rule 10.10 allows for the correction of a clerical mistake in a judgment arising from oversight or omission.  Id. at *1.  In this appeal Turner alleged the trial court erred when it refused

8

to amend his judgment of conviction to reflect that the jury found him guilty of wanton murder and not murder as stated in the judgment of conviction. Id. Turner also argued the Commonwealth's constructive amendment of the indictment violated the double jeopardy provisions of the United States Constitution. Id. The Kentucky Court of Appeals concluded the omission of the "adjective 'wanton' from the judgment is not an error that the circuit court was required to correct" because under Kentucky law the crime of murder includes both intentional and wanton murder and provides for the same penalty. Id. at *1. It held the double jeopardy claim was procedurally defaulted because it could have been previously raised in a post-conviction motion and it is not a clerical error properly raised under Ky.R.Crim.P. 10.10. Id. There is no indication that Turner moved for discretionary review by the Supreme Court of Kentucky.

In his petition for writ of habeas corpus, Turner identifies five grounds for relief (DN 1, Memorandum at 23). Specifically, Turner claims (1) he was denied his right to due process and equal protection of the law, and to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution because he was convicted at trial and sentenced on the basis of an improper constructive amendment to the indictment; (2) the trial court erred to his substantial prejudice, and violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, by allowing into evidence improper hearsay statements naming him as the perpetrator in the death of his father; (3) he was denied conflict free counsel at trial in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution; (4) he was denied his right to effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendments under the United States Constitution; and (5) he received ineffective assistance of appellate counsel on direct appeal in violation of the Sixth and Fourteenth Amendments to the

United States Constitution (DN 1, Memorandum at 23).

<u>CONCLUSION OF LAW</u>

Since Turner filed his petition for writ of habeas corpus on September 29, 2005 (DN 1) review of the State court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997).  As to each claim made by Turner, the Court must determine first whether a constitutional right has been violated.  <u>Williams v. Taylor</u>, 529 U.S. 362, 367 (2000). If the answer is in the affirmative and the State court adjudicated the claim on its merits, this Court must then employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition.  <u>Williams</u>, 529 U.S. at 367, 402-403, 412-413.  As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."

Under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if "the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] ... on a

question of law or if the state court decides a case differently than ...[the Supreme Court] ... has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-413.   Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the petition if  "the state court identifies the correct governing principle from ... [the Supreme Court's] ... decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.  To meet this standard the State court's application of clearly established federal law must be more than incorrect, it must be objectively unreasonable. <u>Id.</u> at 409-411.  To meet the "unreasonable determination of facts" standard in § 2254(d)(2) the undersigned opines the State court's determination of facts must be more than incorrect, it must be objectively unreasonable.  In sum, § 2254(d), as amended by Chapter 153 of AEDPA, places constraints on the power of the Court to grant a petition as to constitutional claims adjudicated on the merits in the State courts. <u>Williams</u>, 529 U.S. at 412.


A

In Ground One Turner argues he was denied his right to due process and equal protection of the law, and to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution because he was convicted at trial and sentenced on the basis of an improper constructive amendment to the indictment (DN 1, Memorandum at 23, 24-29).  Relying on the holding in <u>Lucas v. O'Dea</u>, 179 F.3d 412, 416 (6th Cir. 1999), Turner argues the jury instruction constructively amended the intentional murder charge in the indictment to a wanton murder charge (DN 1, Memorandum at 25-29).

Respondent argues federal review of the claim in Ground One is barred because Turner procedurally defaulted it in the State courts and has failed to show "cause" and "prejudice"

to excuse his procedural default (DN 10 at 9-12).   In his traverse, Turner asserts he did not

procedurally default the claim in the State courts (DN 18 at 7-15).   If, however, the Court finds

otherwise, then Turner raises a claim of ineffective assistance of appellate counsel to show "cause"

(DN 18 at 7-15; DN 34 at 8-10).

Turner first presented his constructive amendment claim to the State courts by filing

a petition for writ of prohibition with the Kentucky Court of Appeals (DN 16, Appendix at 148-159).

A writ of prohibition is an original action filed in Kentucky's intermediate appellate court.   The St.

Luke Hospitals, Inc. v. Kopowski, 160 S.W.3d 771, 773 (Ky.App. 2005).   Kentucky law provides

as a matter of right an appeal to the State's highest appellate court.   Id.   Here, the Kentucky Court

of Appeals ruled that Turner procedurally defaulted his constructive amendment claim because he

failed to raise it on direct appeal (DN 16, Appendix at 161-162).   The Supreme Court of Kentucky

dismissed Turner's appeal of this ruling because it held he failed to perfect his appeal (DN 16,

Appendix at 164).

Contrary to Turner's assertion, the Kentucky Court of Appeals has clearly and

expressly stated that its judgment rests on a State procedural rule (DN 16, Appendix at 161-162).

Harris v. Reed, 489 U.S. 255, 262-266 (1989) (applying the "plain statement" requirement).   Further,

the ruling by the Kentucky Court of Appeals with respect to State procedural law is binding on this

Court.   Olsen v. McFaul, 843 F.2d 918, 933 (6th Cir. 1988); See also Wainwright v. Goode, 464 U.S.

78, 84 (1983) (per curiam).   For these reasons, the undersigned declines Turner's invitation to

reexamine a State appellate court determination on a State procedural law question.   Estelle v.

McGuire, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine

state court determinations on state law questions.").   In sum, Turner procedurally defaulted his

constructive amendment claim by failing to raise it on direct appeal.

Since Turner failed to comply with a State procedural rule and that failure provided an adequate and independent ground for the State's denial of relief, federal review of his claim is barred absent a showing of both "cause" and "prejudice."  Harris v. Reed, 489 U.S. 255 (1989); Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72, 78-79 (1977).  To establish "cause" Turner must demonstrate that something external to him impeded his efforts to comply with the State's procedural rules.  Coleman v. Thompson, 501 U.S. 722 (1991).  For example, if Turner can show his failure to comply with the State's procedural rules was the product of constitutionally deficient performance by counsel then he has sustained his burden.  Murray, 477 U.S. at 489; Lucas v. O'Dea, 179 F.3d 412, 418 (6th Cir. 1999).  Notably, he is alleging appellate counsel's failure to raise the constructive amendment claim on direct appeal is ineffective assistance of counsel.

In Strickland v. Washington, the Supreme Court observed a claim that counsel's assistance was so defective as to require reversal of a conviction or sentence has two components. 466 U.S. 668, 687 (1984).  In this regard, the Supreme Court commented as follows:

> "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable."

Id.

To satisfy the performance component a defendant must show that trial counsel's

representation fell below an objective standard of reasonableness.  Id. at 688.  Notably, judicial

scrutiny of counsel's performance must be highly deferential.  Id. at 689.  To conduct a fair

assessment of the attorney's performance, the Court must make every effort "to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

to evaluate the conduct from counsel's perspective at the time."  Id.  Due to the difficulties inherent

in making such an evaluation, the Court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance.  Id.  Thus, in addressing an actual

ineffectiveness claim the Court "must judge the reasonableness of counsel's challenged conduct on

the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Further, the

Court must determine whether, in light of all the circumstances, the acts or omissions identified by

the defendant were outside the "wide range of professionally competent assistance."  Id.  In making

this determination, the Court should keep in mind that counsel's function is to make the adversarial

testing process work in the particular case.  Id.  At the same time, the Court should recognize the

strong presumption that counsel "rendered adequate assistance and made all significant decisions

in the exercise of reasonable professional judgment."  Id.

The Supreme Court noted  that "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

no effect on the judgment."  Id. at 691 (citation omitted).  "The purpose of the Sixth Amendment

guarantee of counsel is to insure that a defendant has the assistance necessary to justify reliance on

the outcome of the proceeding."  Id. at 691-692.  For this reason, "any deficiencies in counsel's

performance must be prejudicial to the defense in order to constitute ineffective assistance under the

Constitution."  Id. at 692.  Accordingly, the appropriate test for prejudice requires the defendant

14

show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

This two-part test applies to claims of ineffective assistance of appellate counsel. Bell v. Lockhart, 795 F.2d 655, 657 (8th Cir. 1986). Notably, the Court need not conduct the two-part inquiry in the order identified above or even address both parts of the inquiry if the defendant makes an insufficient showing on one part. Strickland, 466 U.S. at 697. For example, if the Court determines that the defendant failed to satisfy the second part of the test then it need not determine whether the defendant has satisfied the first part. Id.

The undersigned will first address whether Turner has satisfied his burden as to the performance component under Strickland. In relevant part the indictment reads as follows:

> "THE GRAND JURY CHARGES that on or about October 18, 1997, in Allen County, Kentucky, the above-named defendant committed the offense of Murder by beating William Turner with a tire iron and slamming his head against a wall numerous times..."

(DN 12, Appendix at 1). The indictment identifies KRS 507.020 which indicates the offense of murder may be committed with either of two culpable mental states, intentional or wanton.[1] Smith

---

[1]The statute reads as follows:

"(1) A person is guilty of murder when:

(a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any

v. Commonwealth, 737 S.W.2d 683, 687, 689 (Ky. 1987).  Notably, wanton murder is not a lesser-included offense of murder.  Id. at 689.  "It is simply murder committed with a different state of mental culpability, but murder, whether intentional or wanton is a capital offense."  Id.

Turner concedes the indictment does not specify the culpable mental state (DN 1, Memorandum at 25).  Further, he cites nothing in the State court record (e.g., superseding indictment or a bill of particulars) that substantiates his assertion that the "charged offense" prior to trial was intentional murder (DN 1, Memorandum at 25).[2]  Finally, he acknowledges the prosecutor's opening statement advised the jury that the Commonwealth did not intend to prove Turner intentionally killed his father (DN 1, Memorandum at 26).  For these reasons, the undersigned concludes there is no factual basis for Turner's claim that the "charged offense" in the indictment was intentional murder.  This also means there is no factual basis for his claim that the jury instruction constructively amended the "charged offense" from intentional murder to wanton murder.  Since there is no factual basis for a constructive amendment claim, Turner cannot demonstrate that counsel's failure to raise this claim on direct appeal falls outside the wide range of professional

---

other crime; or

(b) Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

(2) Murder is a capital offense."

KRS 507.020.  The statute was last amended in 1984.  Thus, the wording of the statute has not changed since the Allen County Grand Jury charged Turner with murder on December 2, 1997.

[2]All that Turner offered is an unsupported averment "that the Commonwealth discussed the subject of the Death Penalty early on in the criminal proceedings" (DN 1, Memorandum at 25).

competent assistance.  <u>Strickland</u>, 466 U.S. at 690.  In sum, the undersigned concludes that Turner has not satisfied his burden as to the first part of the two-part test articulated in <u>Strickland</u>.

In an attempt to satisfy the second part of the <u>Strickland</u> test, Turner relies on the holding in <u>Lucas v. O'Dea</u>, 179 F.3d 412, 418-419 (6th Cir. 1999).  However, <u>Lucas</u> is factually distinguishable from the circumstances herein.  The indictment charged Lucas with intentional murder and two counts of first degree robbery.  <u>Id.</u> at 415.  Further, the indictment stated that Lucas "shot" the victim "with a pistol, causing his death..."  <u>Id.</u>  However, at trial the prosecution's key witness testified that he did not know whether Lucas or his co-defendant, Irwin, fired the fatal shot. <u>Id.</u>

Despite the intentional murder charge in the indictment, at the close of trial the Court gave a wanton murder instruction.  <u>Id.</u>  Specifically, the Court's instruction indicated the jury could find Lucas guilty of murder if it found the victim had been killed during the robbery in which Lucas participated and by so participating in the robbery Lucas was "wantonly" engaging in conduct that created a grave risk of death to another and that he thereby caused the victim's death under "circumstances manifesting an extreme indifference to human life."  <u>Id.</u>  Notably, despite the fact that the indictment charged Lucas fired the fatal shot, the Court advised the jury "it is immaterial which one of them fired the shot that killed..." the victim.  <u>Id.</u>  The jury found Lucas guilty of murder.  <u>Id.</u>

The Sixth Circuit concluded the variance between the intentional murder charge, which required proof that Lucas fired the fatal shot, and the wanton murder instructions, that did not, was sufficiently material to constitute a constructive amendment.  <u>Id.</u> at 417.  Further, the Sixth Circuit concluded "[b]ecause it exposed Lucas to charges for which he had no notice and thus no

17

opportunity to plan a defense, the variance from the indictment to the jury instruction constituted a constructive amendment that deprived him of his Fourteenth Amendment right to notice of the charges against him.  Id.

Lucas procedurally defaulted his constructive amendment claim in the State courts because he did not raise it on direct appeal.  Id. at 418.  For this reason, the Sixth Circuit considered whether Lucas' claim of ineffective assistance of appellate counsel could constitute "cause" under the "cause" and "prejudice" test.  Id.  at 418-419.  The Sixth Circuit, relying on Strickland, concluded appellate counsel's performance was deficient and there was a "reasonable probability" that, but for counsel's failure to raise the claim on appeal the outcome of the proceeding would have been different.  Id. at 419.  Thus, it found Lucas showed "cause" to overcome the procedural default. Id.

Here, Turner is the only defendant.  The indictment charged that he committed the offense of murder by beating his father with a tire iron and slamming his father's head against a wall numerous times.  The prosecutor's opening statement, the evidence at trial, and the trial court's jury instruction remained consistent with the charge in the indictment - - Turner murdered his father by beating his father with a tire iron and by slamming his father's head against a wall numerous times. Thus, the circumstances here are not similar to those in Lucas.  Furthermore, Turner has not demonstrated that he was denied the opportunity to plan a defense because the indictment failed to specify whether the culpable mental state was intentional or wanton.  In sum, Turner has not been deprived of his Fourteenth Amendment right to notice of the charge against him.  For this reason, the undersigned concludes Turner has not shown there is a "reasonable probability" that, but for counsel's failure to raise the constructive amendment claim on direct appeal, the result of the appeal

18

would have been different.  <u>Strickland</u>, 466 U.S. at 694.

In light of the above findings, the undersigned concludes that Turner has failed to sustain his burden of demonstrating "cause" to overcome his procedural default.  Nor can Turner show actual "prejudice" as a result of the claimed constitutional error.  <u>United States v. Frady</u>, 456 U.S. 152, 170-171 (1982).  There is overwhelming evidence of his guilt and a lack of evidence for his constructive amendment claim.  <u>Id.</u> at 170-172.  In sum, since Turner has failed to make a showing of "cause" and "prejudice," federal review is barred as to the constructive amendment claim in Ground One of his petition.

Since the undersigned recommends the Court deny the claim in Ground One on a procedural ground, Turner must satisfy both prongs of the test articulated in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-485 (2000), to be entitled to a Certificate of Appealability.  To satisfy the first prong of the <u>Slack</u> test, he must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  <u>Id.</u> at 484.  To satisfy the second prong, Turner must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u>  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  <u>Id.</u>  Notably, the Court need not conduct the two-prong inquiry in the order identified or even address both parts if Turner makes an insufficient showing on one part.  <u>Id.</u> at 485.  For example, if the Court determines he failed to satisfy the procedural prong then it need not determine whether the constitutional prong is satisfied.  <u>Id.</u>

Here, a plain procedural bar is present as to the claim in Ground One of the petition.

For this reason, the undersigned concludes that jurists of reason would not find it debatable whether Turner is procedurally barred from proceeding with this claim.  Therefore, the undersigned does not recommend issuance of a Certificate of Appealability as to his claim in Ground One of the petition.

B

In Ground Two Turner argues the trial court erred to his substantial prejudice, and violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, by allowing into evidence improper hearsay statements naming him as the perpetrator in the death of his father.  Respondent contends that federal review of this claim is barred because Turner presented only a State law claim on direct appeal and he is now procedurally barred from presenting his federal constitutional claim to the State courts (DN 10, 11).

The undersigned has reviewed Turner's direct appeal brief and notes that he presented a purely State law claim (DN 12, Appendix at 11-17).  He did not allege that the trial court's ruling that allowed into evidence the victim's dying declaration violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution (DN 12, Appendix at 11-17).  Nor did his direct appeal briefs cite in conjunction with the claim a federal source of law upon which he relied; a federal or State case deciding his claim on federal grounds; or label his claim as federal.  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  For these reasons, the undersigned concludes that Turner did not "fairly present" his constitutional claim to the State courts before raising it in his § 2254 petition.  Baldwin, 54 U.S. at 29, 32.

Federal habeas corpus review is not available until Turner "fairly presents" his federal constitutional claim to the State courts.  Id.  However, Turner is now procedurally barred

20

from raising his federal constitutional claim in the State courts because he did not raise it on direct appeal. Bronston v. Commonwealth, 481 S.W.2d 666, 667 (Ky. 1972). Since this procedural bar provides an adequate and independent grounds for the State's denial of relief and Turner has failed to show "cause" and "prejudice" to excuse this procedural default, federal review of this claim is barred. Reed v. Farley, 512 U.S. 339, 353-355 (1994); Teague v. Lane, 489 U.S. 288, 297-299 (1989).

Since a plain procedural bar is present as to the claim in Ground Two of the petition, the undersigned concludes that Turner has not satisfied the second prong of the test set forth in Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). For this reason, the undersigned concludes that jurists of reason would not find it debatable whether Turner is procedurally barred from proceeding with this claim. Therefore, the undersigned does not recommend issuance of a Certificate of Appealability as to his claim in Ground Two of the petition.


C

In Ground Three Turner argues he was denied conflict free counsel at trial in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution. Respondent argues federal review is not available as to this claim because Turner did not "fairly present" this federal constitutional claim to the State courts (DN 10, 11).

The undersigned concludes that Turner did "fairly present" his federal constitutional claim in the State courts both in his direct appeal brief and his collateral attack brief. In his direct appeal brief he alleged the conflict resulted in an infringement of "his Sixth Amendment right to counsel" as a result of the conflict (DN 12, Appendix at 21). Further, in his collateral attack brief

challenging the trial court's denial of his Rule 11.42 motion he again raised a federal constitutional claim (DN 13, Appendix at 109, 116). In sum, Turner has "fairly presented" his claim to the State courts because he has cited a federal source of law upon which he relies; federal and State cases deciding such a claim on federal grounds; and by simply labeling the claim a violation of his Sixth Amendment right under the United States Constitution. Baldwin v. Reese, 541 U.S. 27, 32 (2004).

A defendant succeeds on an ineffective assistance of counsel claim under the Sixth Amendment if he demonstrates that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). A defense attorney has an "actual conflict" when he is required to make a choice that advances the interests of one client to the detriment of the interests of another client. United States v. Bruce, 89 F.3d 886, 893 (D.C. Cir. 1996). Further, the "adversely affected" element of the Cuyler test requires a showing that the "actual conflict" resulted in an actual lapse in representation. 466 U.S. at 349. If a defendant makes the required showing under Cuyler, then he avoids the more stringent two-part test for assessing ineffective assistance of counsel that is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the two-part test in Strickland the defendant must demonstrate that counsel's performance was objectively deficient and that the deficient performance prejudiced the defendant, depriving him of a fair trial. Id. at 688. By contrast, once a defendant meets the Cuyler test, prejudice is presumed. Strickland, 466 U.S. at 692.

On direct appeal the Supreme Court of Kentucky considered whether a conflict of interest existed (DN 12, Appendix at 44-45). The Supreme Court of Kentucky noted that defense counsel simultaneously represented Turner on the murder charge and Cathy Scruggs on an unrelated narcotics charge (DN 12, Appendix at 44). When Turner attempted to call Ms. Scruggs as a witness,

22

defense counsel continued to represent him at trial.  However, another attorney was appointed to advise Ms. Scruggs on her Fifth Amendment rights.  After Ms. Scruggs consulted with her newly appointed counsel, she refused to testify and was not called as a witness (DN 12, Appendix at 44).  On direct appeal Turner argued the fact that he and Ms. Scruggs were both represented by the same attorney triggered the requirement in Ky.R.Crim.P. 8.30(1) that the trial judge advise him of the fact of dual representation and the possibility of a conflict of interest (DN 12, Appendix at 44).  The Supreme Court of Kentucky found that Ky.R.Crim.P. 8.30(1) had no application to the facts because Ms. Scruggs was never charged with Bill Turner's murder (DN 12, Appendix at 44-45).  Further, the Supreme Court of Kentucky noted that any possible conflict of interest had been avoided by the appointment of independent counsel to advise Ms. Scruggs of her Fifth Amendment rights when Turner attempted to call her as a witness (DN 12, Appendix at 44-45).

In his Rule 11.42 motion Turner again raised the issue of a conflict of interest in the context of a claim of ineffective assistance of counsel.  The Kentucky Court of Appeals in addressing this claim noted that the Kentucky Supreme Court had already determined  there had been no conflict of interest (DN 13, Appendix at 143-144).  The Kentucky Court of Appeals also noted that after the newly appointed counsel advised Ms. Scruggs of her Fifth Amendment rights, Turner's trial counsel questioned her and determined that she would testify that, in the days leading up to his death, Bill Turner hid out in his apartment because he was afraid his son, Turner, would kill him (DN 13, Appendix at 144).  Additionally, Turner's trial counsel was advised by Ms. Scruggs' newly appointed counsel that she would refuse to testify regarding anything, such as her alleged drug activities, that could implicate her in unlawful behavior (DN 13, Appendix at 144).  The Kentucky Court of Appeals concluded that Turner's trial counsel made a sound, strategic decision

23

not to call Ms. Scruggs as a defense witness because her testimony would tend to be harmful to Turner (DN 13, Appendix at 144).

The undersigned notes that Turner has not rebutted by clear and convincing evidence the presumption of correctness afforded the above factual determinations by the Supreme Court of Kentucky and the Kentucky Court of Appeals.  In sum, Turner's claim of ineffective assistance fails under the Cuyler test because there is no showing of an actual conflict, nor is there any showing that the alleged conflict adversely affected trial counsel's performance.  Since Turner has failed to demonstrate a violation of his Sixth Amendment right to counsel, it is not necessary to perform a § 2254(d) review.

Notwithstanding, the rule set forth in Cuyler "qualifies as 'clearly established federal law as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting § 2254(d)(1)).  Clearly, adjudication of Turner's claim in the State courts has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in Cuyler.  Williams, 529 U.S. at 412-413 (quoting § 2254(d)(1)).  Nor has the State appellate courts made an unreasonable determination of the facts in light of the evidence presented during the State court proceeding.  28 U.S.C. § 2254(d)(2).  In sum, under the standard of review set forth in § 2254(d) Turner is not entitled to a writ on the claim set forth in Ground Three of his petition.

For the reasons set forth above, the undersigned concludes that jurists of reason would not find it debatable whether Turner has stated a valid claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for the claim of ineffective assistance of

24

counsel set forth in Ground Three.

D

In Ground Four Turner argues he was denied his right to effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendments under the United States Constitution. Specifically, Turner claims he received ineffective assistance because counsel failed to  (1) file a motion to suppress evidence gathered from "warrantless searches and re-entries of the crime scene apartment"[3]; (2) challenge police testimony at the Grand Jury proceeding and at the preliminary hearing regarding the dying declaration of Bill Turner; (3) impeach Anna Lee Fisher's testimony on a time discrepancy; (4) develop and present evidence that impeached the integrity of the bloody tire tool; (5) strike a biased juror (Henry Weaver) during voir dire; (6) interview and impeach prosecution witness Sue Stotts; (7) impeach prosecution witness Steve Burnett; (8) move for a directed verdict at the conclusion of the Commonwealth's opening statement because the prosecutor indicated he did not expect to prove Turner intentionally killed Bill Turner; (9) alert the Court to the matter of juror misconduct or move for a mistrial based on such misconduct; (10) object to the trial court giving a wanton murder instruction to the jury; (11) investigate and adequately prepare for trial (DN 1, Memorandum at 42-59).

Essentially Ground Four of the petition identifies eleven reasons why Turner believes

--------

[3]Turner claims to have been an occupant of his father's apartment (DN 1, Memorandum at 46-47).

trial counsel rendered ineffective assistance (DN 1, Memorandum at 42-65). Notably, the first ten reasons set forth in Ground Four were not raised in Turner's appellate brief challenging the trial court's order that denied his Rule 11. 42 motion (DN 13, Appendix at 94-121). Since Turner did not raise these eleven reasons in his collateral attack brief to the Kentucky Court of Appeals he is now procedurally barred from doing so. Gross v. Commonwealth, 648 S.W.2d 853, 857 (Ky. 1983). Normally, constitutionally ineffective assistance of counsel is "cause" to excuse a procedural default in a State court. Murray v. Carrier, 477 U.S. 478, 489 (1986). However, Turner cannot show "cause" by claiming ineffective assistance of counsel in a collateral post-conviction proceeding. 28 U.S.C. § 2254(I). Since Turner's procedural default of these first ten reasons provides an adequate and independent ground for the State's denial of relief and Turner has failed to show "cause" to excuse this procedural default, federal review is barred as to these ten reasons. Reed v. Farley, 512 U.S. 339, 353-355 (1994); Teague v. Lane, 489 U.S. 288, 297-299 (1989).

Since a plain procedural bar is present as to the first ten reasons in support of his ineffective assistance of trial counsel claim, the undersigned concludes that Turner has not satisfied the second prong of the test set forth in Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). For this reason, the undersigned concludes that jurors of reason would not find it debatable whether Turner is procedurally barred from proceeding with the first 10 reasons in support of his ineffective assistance of trial counsel claim. Therefore, the undersigned does not recommend issuance of a Certificate of Appealability as to the first ten reasons in support of his ineffective assistance of trial counsel claim, set forth at Ground Four of the petition.

In light of the above finding, only the 11th reason in the petition remains. Essentially, Turner claims he received ineffective assistance because trial counsel failed to investigate and

adequately prepare for trial.  With the single exception of failing to investigate Leslie Simmons'

alleged threat to kill Bill Turner, the undersigned concludes that Turner has failed to show counsel's

performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, given

the overwhelming evidence of Turner's guilt which included his presence at the scene; he was

covered with blood and he had bruising that suggested he had recently been in a fight; his threats

against his father in the presence of Sue Stotts; the victim's car keys and wallet were found in

Turner's pocket; the bloody tire tool was found inside Turner's locked car; and finally the victim's

dying declaration named Turner as his assailant.  Clearly, Turner has not shown there is a

"reasonable probability" that, but for counsel's failure to investigate the alleged death threat made

by Leslie Simmons, the result of the trial would have been different.  Strickland, 466 U.S. at 694.

Since Turner has failed to demonstrate a violation of his Sixth Amendment right to

counsel, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the rule set forth in

Strickland "qualifies as 'clearly established Federal law as determined by the Supreme Court of the

United States.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting § 2254(d)(1)).  Clearly, the

Kentucky Court of Appeals' adjudication of this claim has not resulted in a decision that is either

"contrary to" or involved "an unreasonable application of," the rule set forth in Strickland.

Williams, 529 U.S. at 412-413 (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals

made an unreasonable determination of facts in light of the evidence presented during the Rule 11.42

evidentiary hearing.  28 U.S.C. § 2254(d)(2).  In sum, Turner is not entitled to a writ on this claim

of ineffective assistance of counsel set forth in Ground Four of his petition.

For the reasons set forth above, the undersigned concludes that jurists of reason

would not find it debatable whether Turner has stated a valid claim of the denial of a constitutional

right.   <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).   Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for his claim that he received ineffective assistance from trial counsel because counsel failed to investigate and adequately prepare for trial.

E

In Ground Five Turner argues he received ineffective assistance of appellate counsel on direct appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution.   Specifically, Turner claims he received ineffective assistance on direct appeal because counsel failed to (1) present the issue of inconsistent or even perjured testimony from Detective Plowman during the Grand Jury proceeding; (2) present the issue of the trial court's constructive amendment to the indictment when the Judge gave a wanton murder instruction instead of an intentional murder instruction to the jury; (3) challenge the sufficiency of the indictment; and (4) challenge the sufficiency of the evidence to sustain a conviction for wanton murder (DN 1, Memorandum at 67-73).

Essentially, Turner has presented 4 reasons he believes that appellate counsel rendered ineffective assistance (DN 1, Memorandum at 67-73).   For the reasons set forth above, the undersigned has already concluded as to the second reason Turner cannot satisfy the performance and prejudice components under <u>Strickland</u>.   Thus, the undersigned need only address reasons 1, 3 and 4 articulated by Turner.

Kentucky law provides a very limited method for presenting a claim of ineffective

28

assistance of appellate counsel.  Hicks v. Commonwealth, 825 S.W.2d 280, 281 (Ky. 1992).  The proper method is to file a motion with the appellate court that had jurisdiction to hear the direct appeal.  Id.  However, this remedy is only available if the right of direct appeal has been lost because counsel failed to appeal the conviction or counsel failed to prosecute the appeal.  Id.; Commonwealth v. Wine, 694 S.W.2d 689, 694-695 (Ky. 1985).

Since Turner's direct appeal was completely processed and the judgment affirmed there is no method under Kentucky law for him to present a claim of ineffective assistance of appellate counsel.  Hicks, 825 S.W.2d at 281; Wine, 694 S.W.2d at 694-695.  Consequently, Turner has exhausted his available State remedies as to the claim of ineffective assistance of appellate counsel asserted in Ground Five.  Thornhill v. O'Dea, 1994 WL 105954, *1 (6th Cir. 1994) (unpublished opinion).

As previously mentioned, the two-prong test enunciated in Strickland applies to claims of ineffective assistance of appellate counsel.  Smith v. Murray, 477 U.S. 527, 536 (1986).  Essentially, Turner has succumbed to the temptation of second-guessing appellate counsel's assistance after the Supreme Court of Kentucky affirmed his conviction on direct appeal.  Further, he is at best speculating about what could have happened if appellate counsel had just raised the claims identified above.

A fair assessment of appellate counsel's performance requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689-690.  Additionally, in assessing appellate counsel's performance the Court must consider "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more

29

likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith, 477 U.S. at 536 (quoting Jones v. Barnes, 463 U.S. 745, 751-752 (1983)).

The undersigned will now address each of the 3 remaining reasons that Turner believes his appellate counsel was ineffective. First, Turner argues that counsel was ineffective because he failed to present the issue of inconsistent, perhaps even perjured, testimony by Detective Plowman before the Grand Jury (DN 1, Memorandum at 67-68). Turner reasons that the Detective's testimony was relevant to the Grand Jury's deliberations on whether to indict him for the murder of his father (DN 1, Memorandum at 67-68). However, Turner seems to overlook the fact that a petit jury subsequently found him guilty beyond a reasonable doubt on the charge he murdered his father. Essentially, the petit jury verdict renders Turner's argument moot. Clearly, Turner has not overcome the presumption that it was sound appellate strategy not to raise this issue on appeal. Strickland, 466 U.S. at 689. Additionally, since the petit jury returned a verdict of guilty to the charge of murder, Turner cannot show that there is a "reasonable probability" that, but for counsel's failure to raise the issue of inconsistent or perjured testimony in front of the Grand Jury, the result of the proceeding would have been different. Id. at 694.

Next, Turner argues that appellate counsel was ineffective because he failed to raise the issue of the sufficiency of the indictment itself (DN 1, Memorandum at 68-69). Unfortunately, Turner's argument is premised on the belief that the indictment charged him with intentional murder (DN 1, Memorandum at 69). For the reasons set forth above, there is no merit to Turner's belief. Since there is no factual basis for this claim Turner cannot satisfy his burden as to the performance and prejudice prongs under Strickland.

Next, Turner argues that appellate counsel was ineffective because he did not

challenge the sufficiency of the evidence to sustain a conviction for wanton murder (DN 1, Memorandum at 69-72). Unfortunately, Turner turns a blind eye to the overwhelming evidence presented by the prosecution, including his father's own dying declaration, that sustains his conviction for murder. Thus, there is no factual basis for an appellate challenge to the sufficiency of the evidence supporting his conviction for murder. For this reason, the undersigned concludes that Turner cannot satisfy the performance and prejudice components under Strickland.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Turner has stated a valid claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for the claim of ineffective assistance of counsel set forth in Ground Five.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Turner's petition for writ of habeas corpus be DENIED and that a Certificate of Appealability be DENIED as to all of the claims set forth in his petition.

## NOTICE

31

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be mailed to all parties.  Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be filed within ten (10) days or further appeal is waived.  Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, U.S. 140 (1984).  Counsel will please forward a copy of any objections to the undersigned Magistrate Judge at 126 United States Courthouse, 423 Frederica Street, Owensboro, Kentucky 42301.

Copies:         Petitioner, *pro se*
                Counsel of Record